## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BRUCE ALEXANDER JONES,

                2:16-CV-04608-HBF

             Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
             Defendant.

_____

**APPEARANCES:**

CHERYL GANDEL MAZUR
195 FAIRFIELD AVENUE
SUITE 2C
WEST CALDWELL, NJ 07006
    On behalf of Plaintiff

SANDRA ROMAGNOLE
SOCIAL SECURITY ADMINISTRATION
REGION III
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA 19101
    On behalf of Defendant

**FITZSIMMONS**, Magistrate Judge

## OPINION

Plaintiff Bruce Alexander Jones brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), seeking review of a final decision of the Acting Commissioner of Social Security who denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act").

Plaintiff has moved for an award of disability benefits or, in the alternative, to reverse the case and remand for a rehearing. The Commissioner has moved to affirm.

For the reasons that follow, the Commissioner's decision is affirmed.

## I.    PROCEDURAL HISTORY

On June 23, 2009, the plaintiff filed an application for SSI, with an alleged onset date of disability of January 5, 2006. [Certified Transcript of the Record, Compiled on September 2, 2016, Doc. #7 (hereinafter "Tr.") at 20]. Plaintiff alleged disability due to "hypertension, mild leucopenia, anemia, knee and hip pain, hyperlipidemia." [Tr. 368]. His SSI claim was denied initially and upon reconsideration. [Tr. 153-54, 204-15].

Jones requested an independent review of the evidence and, due to the Appeals Council's remands in 2012 and 2014, two different ALJs held hearings in February 2011, January 2013, and August 2014, at which Jones was represented by counsel. In addition to plaintiff, a friend, a medical expert and two impartial vocational experts ("VE") testified at these hearings.[1] [Tr. 45-152].

---

[1] At the first hearing on February 1, 2011, the ALJ heard testimony from a friend, Cynthia Cobb; a medical expert, Dr. Martin Fechner; and VE Rocco Meola. [Tr. 122-51]. VE Patricia Sasona testified at the second hearing on January 17, 2013. [Tr. 92-98]. ALJ Michael Lissek presided over the first two hearings.

On August 13, 2014, Administrative Law Judge ("ALJ") Dennis O'Leary held a third hearing, at which plaintiff appeared with an attorney and testified. [Tr. 45-69]. On November 14, 2014, the ALJ found that plaintiff was not disabled and denied his claim. [Tr. 45-69]. Plaintiff filed a timely request for review of the hearing decision on December 1, 2014. [Tr. 13]. On June 1, 2016, the Appeals Council denied review, thereby rendering ALJ O'Leary's decision the final decision of the Commissioner. [Tr. 1-5]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

## II.  <u>**STANDARD OF REVIEW**</u>

The standard of review for this Court is whether the ALJ's decision is based on substantial evidence in the record as a whole. 42 U.S.C. §405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). "Overall, the substantial evidence standard is a deferential standard of

---

Plaintiff was the only witness at the third hearing held on August 13, 2014, before ALJ Dennis O'Leary. [Tr. 45-69].

review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004);
see Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159
(3d Cir. 1988).

A reviewing court "must consider the (1) objective medical
facts; (2) diagnoses and medical opinions of examining
physicians; (3) subjective evidence of pain and disability as
described by plaintiff and corroborated by others who have
observed him; and (4) plaintiff's age, educational background
and work history." Curtin v. Harris, 508 F. Supp. 791, 793
(D.N.J. 1981). It "need[s] from the ALJ not only an expression
of the evidence s/he considered which supports the result, but
also some indication of the evidence which was rejected." Cotter
v. Harris, 642 F. 2d 700, 705-06 (3d Cir. 1981); see Burnett v.
Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir.
2000)("Although the ALJ may weigh the credibility of the
evidence, he must give some indication of the evidence which he
rejects and his reason(s) for discounting such
evidence.")(citing Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir.
1999)). "In the absence of such an indication the reviewing
court cannot tell if significant probative evidence was not
credited or simply ignored." Id.

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. The
scope of review is limited to determining whether the

Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the circuit court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence); Plummer, 186 F.3d at 427. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Jones must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limits your physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4)(i-v); 20 C.F.R. §416.920(a)(4)(i-v); Poulos v. Comm'r of Soc. Sec., 474 F.3d 88 91-92 (3d Cir. 2007).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is

still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); 20 C.F.R. §404.1545 (a)(1) ("Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record."); see also 20 C.F.R. §416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV.  **THE ALJ'S DECISION**

Following the above-described five step evaluation process, ALJ O'Leary concluded that plaintiff was not disabled under the Social Security Act. [Tr. 20-35]. At step one, the ALJ found

7

that plaintiff had not engaged in substantial gainful activity since June 23, 2009, the application date. [Tr. 23].

At step two, the ALJ found that plaintiff had "exogenous obesity; a history of heroin addiction, currently in remission; the sequelae of gunshot wounds in both knees; osteoarthritis in both knees; obesity; status-post hip replacement; status-post knee replacement" that were severe impairments under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 25]. The ALJ specifically considered Listings 1.02 (major dysfunction of a joint(s)), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint); and 14.09 (inflammatory arthritis). [Tr. 25].

Before moving on to step four, the ALJ found plaintiff had the RFC to perform the full range of sedentary work.[2] [Tr. 25].

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ also found plaintiff had no past relevant work as defined in 20 C.F.R. §416.965. [Tr. 33].

**V.    DISCUSSION**

On appeal, the plaintiff contends that the ALJ "failed and refused to discuss and evaluate the weight of medical evidence at Steps 2-5." [Doc. #18 at 19]. Specifically, he argues that:

1.    The ALJ failed to consider non-exertional limitations at Step Two;

2.    The ALJ's assessment of plaintiff's subjective complaints, including pain, was error;

3.    The ALJ failed to fully and fairly evaluate Listing 1.02 at Step 3;

4.    Substantial evidence does not support the ALJ's determination that plaintiff has the RFC for sedentary work; and

5.    The ALJ's determination at Step Five was error.

The Court will address each of plaintiff's arguments in turn.

**A.    The ALJ did not err at Step Two.**

At Step Two, ALJ O'Leary found that plaintiff suffered from several severe impairments. Plaintiff raises several arguments that the ALJ erred at Step Two.

---

20 C.F.R. § 416.967(a).

Plaintiff first contends that the ALJ failed to properly consider all of his impairments, and that he should have evaluated osteoarthritis in both hips, left hip avascular necrosis, chronic pain syndrome, borderline IQ and post-traumatic stress disorder at this step of the sequential evaluation. [Doc. #18 at 19].

Plaintiff next argues that "[b]ased on these new and material findings by Social Security's own consultative evaluator, the ALJ was under a duty to order an additional IQ psychological CE to fully and fairly evaluate Listing Level Severity including Listing 12.02 [neurocognitive disorders] and 12.05 [intellectual disorder]." [Doc. #18 at 29-30 (emphasis in original)].

Plaintiff also argues that the ALJ erred at Step Two for failing to find that major depressive disorder and posttraumatic stress disorder were severe conditions and for failing to evaluate these conditions at Step Three of the sequential analysis, based on the mental health treatment records from UMDNJ Behavioral Healthcare from November through December 2009 and the findings and opinions contained in Consultative Evaluator Dr. Marc Friedman's September 2014 report. [Doc. #18 at 30].

A Step Two determination requires the ALJ to determine the severity of the plaintiff's impairments. 20 C.F.R.

§§404.1520(a)(4)(ii); <u>see also id.</u> at (c). At this step, the plaintiff carries the burden of establishing that he is disabled, and must provide the evidence necessary to make determinations as to his disability. 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. <u>See</u> SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities. <u>Id.</u>

At Step Two, if the ALJ finds any impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), <u>aff'd</u>, 515 F. App'x 32 (2d Cir. 2013) (quoting <u>Pompa v. Comm'r of Soc. Sec.</u>, 73 F. App'x 801, 803 (6th Cir. 2003)). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." <u>Pompa</u>, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)). The analysis at step two is wholly independent of the analysis at later steps. Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at step

two, "even if he ... erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." Salles v. Comm'r of Soc. Sec., 229 F. App'x. 140, 145 n. 2 (3d Cir. 2007). "As such, where the Commissioner finds that the claimant suffers from even one severe impairment, any failure...to identify other conditions as being severe does not compromise the integrity of the analysis." Ross v. Astrue, Civil Action No. 08-5282(SDW), 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (citing Salles, 229 F. App'x at 145 n. 2; Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 261 n. 2 (3d Cir. 2006)); see, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error [] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, the ALJ found that plaintiff had the severe impairments of exogenous obesity; heroin addiction-in remission; sequelae of gunshot wounds in both knees; osteoarthritis; status-post hip replacement; status-post knee replacement and depression. [Tr. 23]. At Step Two, the ALJ did not discuss the other impairments as to which error is claimed (left hip avascular necrosis, chronic pain syndrome, borderline IQ, and post-traumatic stress syndrome). Nevertheless, because the ALJ did find several severe impairments and proceeded with the

sequential evaluation, all impairments, whether severe or not, were considered as part of the remaining steps. Indeed, the ALJ's decision reflects that he considered plaintiff's alleged hip and knee impairments, pain, and psychiatric history in following the above-described sequential process. See Tr. 23-24, 31 (summarizing mental health treatment records); Tr. 26-27 (summarizing medical records noting hip and knee pain); Tr. 28-30 (summarizing hearing testimony at three hearings); Tr.31 (addressing plaintiff's complaints of pain). Finally, passing references in medical records and "diagnoses alone are insufficient to establish" that an impairment is severe at step two. Salles, 229 F. App'x at 145.

Accordingly, the ALJ's failure to specifically determine whether each of plaintiff's claimed impairments was severe is harmless error, and would not support a reversal of the Commissioner's decision.

Moreover, plaintiff has provided no basis for a referral for an additional psychological CE for borderline intellectual functioning and cognitive impairments. Under the regulations, the ALJ will consider that an impairment causes non-exertional limitations only when there is objective evidence of medically determinable signs and findings that not only establish work-related functional limitations but also the existence of such limitations for 12 continuous months. See 20 C.F.R.

§416.920(a)(4)(ii)(proving that a medically determinable impairment must be both "severe" and meet the "durational requirement" An impairment is severe if it significantly limits an individual's ability to do basic work activities. 20 C.F.R. §416.921. A diagnosis alone does not support that an impairment is severe. See Salles, 229 F. App'x at 145 (3d Cir. 2007)("In addition to the diagnoses, Salles was required to present evidence that these limitations significantly limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.")(emphasis in original). Plaintiff has made no such showing. Indeed, the record shows that plaintiff reported he attended regular classes through grade 11 and later got a GED and he denied academic problems in school.[3] [Tr. 549, 554, 726]. Plaintiff also reported

---

[3] A severe, medically-established impairment must exist before any listing analysis is conducted 20 C.F.R. §416.920(a)(4). Further, to establish that a claimant meets the listing severity for intellectual disability, Listing 12.05, there must be, among other things, evidence demonstrating that "the disorder began prior to your attainment of age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05 (emphasis added). Similarly, Listing 12.02, Neurocognitive disorders, requires evidence satisfying A and B, or A and C:

A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
1. Complex attention:
2. Executive function;
3. Learning and memory"
4. Language;

that he was caring for a special needs child taking him "to school or caring for him because he can't be left alone." [Tr. 554], and reported he enjoyed playing chess. [Tr. 727]. Dr. Friedman found that plaintiff "is capable of managing funds on his own;" "able to communicate clearly and...follow the topic of conversation;" had adequate communications skills and "was able

---

　　5. Perceptual-motor; or
　　6. Social Cognition.

　　　　AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
　　1. Understand, remember, or apply information (See 12.00E1).
　　2. Interact with others (see 12.00E2).
　　3. Concentrate, persist or maintain pace (see 12.00E3).
　　4. Adapt or manage oneself (see 12.00E4).

　　　　OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
　　1. Medical treatment, mental health therapy, psychosocial supports(s), or a highly structured setting(s) that is on going and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
　　2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P App. 1, Listing 12.02 (emphasis added).

to comprehend and follow simple directions." [Tr. 728]. The ALJ considered this evidence in making his RFC finding. [Tr. 24, 32].

Therefore, the Court finds no reversible error at Step Two of the sequential evaluation.

**B.    The ALJ did not err in assessing plaintiff's subjective complaints including pain.**

Plaintiff next argues that "[t]he ALJ erred in failing to fully or fairly evaluate [his] subjective complaints, including pain." [Doc. #18 at 25-28].

The ALJ is required to assess the credibility of the plaintiff's subjective complaints. See generally 20 C.F.R. §404.1529. The courts of the Third Circuit prescribe a two-step process. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a medically determinable impairment that could reasonably produce the alleged symptoms. 20 C.F.R. §404.1529(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding the intensity of the symptoms. 20 C.F.R. §404.1529(c). To do this, the ALJ must determine if objective evidence alone supports the plaintiff's complaints; if not, the ALJ must consider other factors laid out at 20 C.F.R. §404.1529(c). These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's

pain; (3) any precipitating or aggravating factors; (4) the
type, dosage, effectiveness, and side effects of any medication
taken by claimant to alleviate the pain; (5) treatment, other
than medication, the claimant receives or has received for
relief of pain or other symptoms, (6) any other measures other
than treatment the individual uses or has used to relieve pain
or other symptoms; and (7) any other factors concerning the
individual's functional limitations and restrictions due to pain
or other symptoms. SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July
2, 1996) The ALJ must consider all the evidence in the case
record. Id. 1996 WL 374186, at *5. Furthermore, the credibility
finding "must contain specific reasons ... supported by the
evidence in the case record, and must be sufficiently specific
to make clear to the individual and to any subsequent reviewers
the weight the adjudicator gave to the individual's statements
and the reasons for that weight." Id. at *4. Put another way, an
ALJ must assess subjective evidence in light of objective
medical facts and diagnoses. Burns v. Barnhart, 312 F.3d 113,
130 (3d Cir. 2002).

After summarizing plaintiff's testimony, the ALJ made the
following statement regarding plaintiff's credibility:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected
> to cause the alleged symptoms; however the claimant's
> statements concerning the intensity, persistence and

17

limiting effects of these symptoms are not entirely
credible for the reasons explained in this decision.

[Tr. 29]. The ALJ then conducted a detailed analysis of the
objective and other medical evidence of record supporting this
finding. [Tr. 29-32].

As for pain, plaintiff did testify to experiencing pain,
and the ALJ clearly addressed that testimony and did not reject
plaintiff's allegations completely. The ALJ found that plaintiff
"may experience some pain and discomfort from his condition;"
however, the ALJ found that "his subjective complaints of pain
are far in excess of what could reasonably be expected from his
medical condition and the objective medical evidence." [Tr. 31].

A close review of the ALJ's decision reflects that he did in
fact consider plaintiff's allegations of pain, their consistency
or inconsistency with the objective medical evidence, and how
such complaints of pain generally did not result in functional
limitations. See Tr. 26-32. "Although 'any statements of the
individual concerning his or her symptoms must be carefully
considered,' SSR 96-7p (July 2, 1996), the ALJ is not required to
credit them, see 20 C.F.R. § 404.1529(a)." Chandler v. Comm'r of
Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011).

Indeed, "[a]n ALJ has discretion 'to evaluate the
credibility of a claimant and to arrive at an independent
judgment, in light of medical findings and other evidence,

18

regarding the true extent of the pain alleged by the claimant.'" Claussen v. Chater, 950 F. Supp. 1287, 1292 (D.N.J. 1996)(quoting LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)). This is precisely the evaluation performed by the ALJ here. Accordingly, the Court finds no error.

Here, where the ALJ has identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000). Moreover, the ALJ had the opportunity to personally observe plaintiff and his testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

**C. Substantial evidence supports the ALJ's Step Three findings.**

The plaintiff challenges the ALJ's findings at Step Three, arguing that he meets Listing 1.02. [Doc. #18 at 28-29]. Plaintiff bears the burden of proof at Step Three of the sequential inquiry. Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). At Step Three, an applicant is required to identify a particular listing under which he may qualify. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

The plaintiff contends that his impairments meet the requirements of Listing 1.02, which addresses major dysfunction of a joint:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.

Plaintiff argues that his bilateral hip and knee impairments clearly meet Listing 1.02 because he has an inability to ambulate effectively. [Doc. #18 at 28-29]. In support of this position, plaintiff cites the consultative report from Dr. Erica N. David dated February 14, 2011. [Doc. #15 at 29 (citing Tr. 574-83)]. Defendant correctly argues that plaintiff has not shown any gross deformity of a joint with signs of limitation of motion as required by the Listing and has not demonstrated an inability to ambulate effectively as defined

20

in 1.00B2b. See 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00B2b. As defendant points out, plaintiff had no treatment for his impairments in 2010 and 2011 with the exception of this one-time evaluation by Dr. David. [Doc. #20 at 4].

The record relied on by plaintiff to support his argument also serves to undermine his position because Dr. David examined plaintiff in February 2011 <u>before</u> his hip replacement surgery in May 2012 and <u>before</u> his knee replacement surgery in March 2011. Substantial evidence supports the ALJ's conclusion that plaintiff's impairments do not meet this Listing. <u>See</u> Tr. 27 (citing Ex. 3F (Tr. 526-29)(Consultative Examiner Dr. Tahmina Sikder dated August 2009, noting taking no pain medication, independent in all activities of daily living, no acute distress, able to walk without cane slowly, needed no help changing for exam or getting on and off exam table, able to rise from chair without difficulty, full range of motion of hips and ankles bilaterally with exception of flexion and extension of knees, strength 5/5 in upper and lower extremities, concluding claimant is moderately limited in walking, climbing, squatting, kneeling, lifting and carrying secondary to his bilateral knee and hip pain.); Tr. 27 (citing Ex. 12F, 18F); Tr. 590-94 (Dr. Richard Boiardo noting plaintiff successfully underwent left hip replacement and is doing quite well, range of motion of the hip is "excellent", "ambulating with a cane...having no complaints

referable to hips"); Tr. 679 (2014 x-ray of left knee showing "successful unicompartmental arthroplasty of the left knee with hemipatellectormy."); Tr. 680 (2014 x-ray of the left hip showing acceptable position of the hip replacement).

Last, the Court notes that plaintiff has failed to cite any evidence of record that supports a finding that he is unable to ambulate effectively, as required by Listing 1.02A and defined in section 1.00B2b. Pursuant to 1.00B2b, an inability to ambulate effectively "means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functions to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing 1.00B2b(1). To ambulate effectively, one "must be capable of sustaining reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. at Listing 1.00B2b(2). There is no evidence of record that plaintiff uses a hand-held assistive device that limits the function of his upper extremities. Finally, there is also substantial evidence of record that plaintiff is capable of ambulating effectively, as that term is defined by section 1.00B2b(2). See Tr. 26-28 (citing Ex. 2F, 3F); Tr. 494-503 (Dr. Volovoy opining that "pt is able to perform a clerical job or work...[without] significant exertion", limiting standing up to

22

2 hour but no sitting limitation); Tr. 527-29 (Dr. Sikder noting "able to walk without the cane very slowly," "[n]eeded no help changing for exam or getting on and off exam table," full range of motion of hips and ankles bilaterally except for flexion and extension of his knees, no evidence of motor or sensory deficit noted, strength 5/5 in upper and lower extremities, "claimant is mildly to moderately limited in walking, climbing, squatting, kneeling, lifting and carrying,"); Tr. 660-66 (Dr. Nanduri noting normal strength in all muscle groups, normal range of motion of all joints, motor strength is 5/5 and equal in all four extremities, deep tendon reflexes are +2/4 and equal bilaterally, no focal neurological deficit, swelling in left knee, right knee with crepitus); Tr. 667-71 (6/4/14 same); Tr. 672-76 (7/7/14 same); Tr. 727 (plaintiff stating that "sometimes during the day goes over to his mother's house to talk with her"). The ALJ noted that plaintiff reported no complaints regarding his hip after Dr. Boiardo performed a left hip replacement in May 2012 [Tr. 27 (citing Ex. 12F, 18F); see Tr. 610-619; 653-676. Indeed, Dr. Nanduri repeatedly encouraged exercise and questioned whether Jones was really in pain or was drug dependent. [Tr. 28, citing 17F; see Tr. 610, 615, 618, 653, 655, 659, 660]. Further, the ALJ noted that both the testifying medical expert and the reviewing medical expert agreed that plaintiff's light to sedentary limitations did not meet or equal

a listing. [Tr. 32 (citing Tr. 129-30 (Dr. Fechner's hearing testimony); Tr. 535-41 (2009 RFC Assessment by Dr. Yeager)]. Indeed, when plaintiff presented in the Emergency Department in June 2012, shortly after left hip replacement surgery, the treatment record notes a normal range of motion in upper and lower extremities [Tr. 626]. Similarly, when plaintiff presented to Dr. Pentyala requesting pain medication in 2014, the doctor noted that plaintiff had normal strength in all muscle groups, normal range of motion in all joints, no effusions or edema, and full motor functioning with no neurological deficits. [Tr. 662-66; 667-71; 672-76].

Accordingly, for the reasons stated, substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 1.02.

**D.    Substantial evidence supports the ALJ's RFC determination.**

Plaintiff next argues that the ALJ's RFC assessment was error. [Doc. #18 at 31-33]. The ALJ found that plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a).

Plaintiff argues that the RFC assessment was incomplete and "[t]he ALJ found exertional and nonexertional limitations which eroded an occupational base for a full range of sedentary work."

24

[Doc. #18 at 31]. The Court construes this as an argument that the ALJ's RFC is not supported by substantial evidence.

> The regulations define sedentary work as follows:
>
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record. Specifically, the ALJ conducted a detailed review of the relevant evidence of record, including plaintiff's testimony, treatment notes from plaintiff's medical providers, and the medical opinions of record. [Tr. 25-33]. The ALJ specifically considered the July 2009 opinion of treating physician Volovoy, the August 2009 assessment of CE Sikder, the testimony of Dr. Fechner, the assessments of the State Agency medical consultants, the claimant's history of a successful left total hip replacement in May 2012 and total left knee replacement in March 2013, March 2014 x-ray of the left hip and left knee, the September 2014 finding of CE Dr. Friedman, and the plaintiff's August 2013 hearing testimony. [Tr. 25-32]. The limitations ascribed by the objective medical testing and their

respective physical and mental RFC determinations support the ALJ's RFC findings.

Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

**E.    Substantial evidence supports the ALJ's Step Five determination.**

ALJ O'Leary determined that Jones, given his age, education, work experience and RFC, was able to perform the full range of sedentary work, and that Medical-Vocational Rule 201.27 therefore directed a finding that Jones was not disabled. [Tr. 34].

Plaintiff argues that "[s]ince there were both exertional and non-exertional impairments, the ALJ committed reversible error by utilizing the Vocational Rules to find the plaintiff not disabled without utilizing expert testimony at Step 5." [Doc. 18 at 33 (quoting Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) and Poulos v. Comm'r of Soc. Sec. Admin., 474 F.3d 88 (3d Cir. 2007)]. The Court disagrees.

At step five, the Commissioner bears the burden on showing that the claimant can perform work which exists in the national economy, in light of her age, education, work experience and RFC. 20 C.F.R. §404.1520(a)(4)(v). The analysis may depend on whether the claimant has only exertional limitations, or has non-exertional limitations. Exertional limitations are

impairment-caused limitations that affect a claimant's ability to meet the strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling. <u>See</u> 20 C.F.R. §404.1569a; SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996). Non-exertional limitations are impairment-caused limitations that affect a claimant's ability to meet the other demands of a job, including mental capabilities; vision and hearing; postural functions such as climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering and feeling; and environmental restrictions. <u>See</u> 20 C.F.R. §404.1569a(c)(1)(i-vi); SSR 96-9p.

Where a claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Rules to determine whether such work exists. The Medical-Vocational Rules set forth tables with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. <u>See</u> 20 C.F.R. Part 404, Subpt. P, App'x 2. "When the four factors in a claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the results the grids reach." <u>Sykes v. Apfel</u>, 288 F.3d 259, 263 (3d Cir. 2000). However, this applies only to exertional limitations; where the claimant has significant non-exertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to determine whether

there are jobs in the national economy that someone with the claimant's combination of impairments could perform. Id. at 270.

As previously discussed, the ALJ's RFC assessment that plaintiff can perform the full range of sedentary work without exertional or nonexertional limitations is supported by substantial evidence of record. [Tr. 24 (ALJ finding that plaintiff has mild restrictions to activities of daily living social functioning and concentration, persistence and pace); Tr. 31 (citing Ex. 17F ) (ALJ finding that "claimant's depression does not impose a vocational restriction on the claimant's ability to perform work related activity."); Tr. 31 (citing Ex. 19F)(citing CE Dr. Friedman's finding "that the claimant's persistence in completing tasks and ability to concentrate were adequate during the interview."); Tr. 31 (citing plaintiff's testimony that "he does not see a psychiatrist or any other health care professional," takes an anti-anxiety medication but nothing for depression and "he does not have any mental restrictions that impose any limitations on him vocationally."); Tr. 31 (ALJ finding that "[a]lthough the claimant's orthopedic history would limit his ability to stand and walk for prolonged periods, these limitations do not preclude sedentary work. Consequently, it was the claimant's sworn testimony at the August 13, 2014 hearing that he could stand for about two hours, with his cane, before he would need to get off his legs about

five to six hours after standing. Again, this is consistent with

sedentary work."); Social Security Ruling ("SSR 83-12"), 1983 WL

31253, *3 (S.S.A. Jan. 1, 1983)("Where the extent of erosion of

the occupational base is not clear, the adjudicator will need to

consult a vocational [expert]."); see Burrows v. Comm'r of Soc.

Sec., Civil No. 13-3744(NLH), 2014 WL 2919469, at *5-6 (D.N.J.

June 27, 2014)(finding reliance on the Grids permissible where

the ALJ "cited extensively" to the objective medical evidence

supporting his finding that plaintiff's statements regarding her

nonexertional limitations were not credible). Because

substantial evidence supports the ALJ's determination that

Jones' impairments did not result in nonexertional limitations,

the ALJ properly found that Jones retained the RFC to perform a

full range of sedentary work, which directed a finding of "not

disabled" under the GRIDS, Medical-Vocational Rule 201.27. [Tr.

34]. The ALJ was not required to use a vocational expert, and

the nature and extent of plaintiff's exertional and

nonexertional limitations did not require one. Accordingly, the

ALJ's determination at Step Five is supported by substantial

evidence, including the prior testimony from two VEs[4].

---

[4]VE Rocco Meola testified on February 1, 2011, and VE
Patricia Sasona testified on January 17, 2013. [Tr. 140-151; 92-
98]. Both VEs testified that there existed "other work" that
plaintiff could perform notwithstanding additional restrictions.
[Tr. 93-92; 141-43]. Indeed, VE Meola's testimony was taken
before plaintiff had his left hip replacement surgery in May

Therefore, the Court finds no reversible error at Step Five of the sequential evaluation.

## VI.    **CONCLUSION**

For the reasons stated, the decision of the Commissioner is therefore **AFFIRMED** and the Clerk is directed to enter judgment in favor of the defendant and instructed to close this case.

An accompanying Order will issue.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #24] on April 11, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED this 16th day of May 2018.

                            /s/
                            _____
                            HOLLY B. FITZSIMMONS
                            UNITED STATES MAGISTRATE JUDGE

---

2012 and VE Sasona's testimony was taken <u>before</u> plaintiff's left knee replacement therapy in March 2013. Since that time, ALJ O'Leary was able to review and consider plaintiff's medical records and mental health records and determine plaintiff's RFC based on his known exertional and non-exertional limitations to find that plaintiff could perform the full range of sedentary work.